# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 5:25-cr-1-11 |
| v. | |
| CHRISTOPHER HAWKINS, | |
| Defendant. | |

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Defendant Christopher Hawkins filed a Motion to Suppress Wiretap Evidence.[1]
Doc. 648.  The Government filed a Response.  Doc. 712.  I held a hearing on this Motion on
October 7, 2025.  Counsel for Defendant and counsel for the Government appeared at the
hearing, and the parties provided additional argument and evidence.  For the following reasons, I
**RECOMMEND** the Court **DENY** Defendant Hawkins's Motion to Suppress.

## BACKGROUND

On January 15, 2025, the grand jury indicted Defendant Hawkins, along with 36 other
individuals, for a range of offenses generally involving drug trafficking, money laundering, and
firearms.  Doc. 3.  The Government alleges these offenses occurred beginning at least as early as
January 14, 2021.  Id. at 3.

As part of its investigation into the alleged offenses, the Government obtained several
wiretap orders in the Southern District of Georgia.  In his Motion, Hawkins alleges that these
wiretaps were invalid and evidence resulting from them should be suppressed.  Doc. 648.  But

---

[1]    There are two Defendants in this criminal case with the last name "Hawkins."  Throughout this
Report and Recommendation, I use "Hawkins" to refer to Christopher Hawkins.

Hawkins does not specify which wiretaps he challenges.  In its Response, the Government identified a series of wiretap orders permitting interception of multiple target telephones and one target Facebook account.  Doc. 712 at 3–4.  At the hearing, counsel for Defendant Hawkins only presented argument contesting wiretap orders for Target Telephone 1.[2]

**Target Telephone 1.**  On August 9, 2023, the Honorable Lisa Godbey Wood authorized a wiretap permitting the Government to intercept communications to and from Target Telephone 1 ("TT1"), bearing a number ending in -2511, used by Defendant Hawkins.  Doc. 712-1 at 2.  The Order stated that there was probable cause to believe the target communications would concern the Target Offenses, including violations of: 18 U.S.C. §§ 922(g), 924(c), 1956, 1957, and 2516 and 21 U.S.C. §§ 841, 843(b), and 846.  The wiretap request was supported by a 73-page affidavit signed by Special Agent Franklin Tyler Fox of the Federal Bureau of Investigation ("Agent Fox").  Doc. 712-3.

In his affidavit, Agent Fox stated that there was probable cause to believe Defendant Hawkins was using TT1 in connection with target offenses, including drug distribution, firearm possession, money laundering, and conspiracy, among other offenses.  Id. ¶ 9.  Agent Fox gathered information about Hawkins, and about TT1, from multiple sources, including reports from law enforcement agencies, interviews, physical surveillance, phone records, subpoenaed records, jail phone conversations, witness interviews, pole camera and mobile surveillance footage, and other evidence.  Id. at ¶ 27.  Agent Fox explained that Hawkins was convicted for a probation violation in 2022, obtaining/procuring/giving an inmate a prohibited item in 2021, burglary in 2019, and aggravated assault in 2017.  Id. ¶ 30.  Agent Fox identified 12 other target

---

[2]    At the hearing, counsel for Hawkins stated that "there may be some issues as far as TT2 goes." However, counsel made no substantive argument about TT2.  Assuming counsel intended his arguments about TT1 to extend to TT2, I have considered those arguments where applicable.

subjects, all of whom were also alleged members of the criminal conspiracy being investigated. Id. at ¶ 30.

In support of probable cause, Agent Fox explained that the target subjects are members of (or affiliated with) a large street gang known as the "Rollin' 60s Crips" ("R6C"). Id. ¶¶ 44–85. The Coffee County Sheriff's Office determined that individuals claiming ties to R6C distributed "large amounts of methamphetamine, crack cocaine, and marijuana in Coffee County and the surrounding counties in Southeast Georgia." Id. ¶ 42. Agent Fox described an interview with a confidential source ("CHS-3") who purchased crack cocaine from target subjects, including Hawkins, for resale. Id. ¶ 45. Agent Fox then described in detail how target subjects would distribute drugs from multiple locations throughout the southeastern United States. Id. ¶¶ 46–50. Agent Fox described a controlled purchase of narcotics through another confidential source ("CHS-1"), who bought crack cocaine from Defendant Hawkins. Id. ¶ 53. Agent Fox described a series of other controlled drug purchases with Hawkins and other Target Subjects. Id. ¶ 54–55. Agent Fox stated that Hawkins was arrested on August 21, 2022, and actively tried to hide his identity from arresting officers. Id. ¶ 56. Agent Fox described a series of interactions on Facebook between Hawkins and another Target Subject seemingly discussing drug purchases. Id. ¶ 57. Agent Fox summarized a series of other drug transactions and related conversations. Id. ¶ 58–73. On multiple occasions, confidential sources called Hawkins on TT1 in the presence of law enforcement, and they discussed arranging drug transactions. Investigators then observed Hawkins meeting the confidential sources for the arranged transactions. Id. ¶ 74–85.

Agent Fox also explained the need for interception, explaining that a wiretap was necessary to determine the full scope of the alleged conspiracy, the identities and roles of various actors and customers, and determining generally how the conspiracy operated. Id. ¶ 95. Agent

Fox explained that law enforcement attempted to use several other investigative techniques, including confidential human sources, physical surveillance, undercover agents, interviews and arrests, search warrants, vehicle tracking devices, phone location data, trash pulls, grand jury subpoenas, pen registers, social media, financial investigations, and electronic surveillance.  Id. ¶ 95–125.  Agent Fox explained why each method was used or not used and why each method was insufficient for the investigation's full purpose.  Id.

On September 7, 2023, the Honorable R. Stan Baker authorized a wiretap, permitting the Government to conduct continued interception of TT1.  Doc. 712-4.  The request was supported by a 60-page affidavit signed by Agent Fox.  Doc. 712-6.  Agent Fox incorporated his affidavit from the prior wiretap application for TT1.  Id. ¶ 41.  Agent Fox provided additional intercepted communications on TT1 that occurred after the previous wiretap Order was issued.  These conversations recorded additional drug transactions involving Defendant Hawkins and TT1.  Id. ¶¶ 42–65.  Agent Fox described additional drug transactions that occurred during this timeframe.  Id.  Agent Fox described how additional methods were used and were ineffective, demonstrating the need for a wiretap.  Id. ¶¶ 69–99.

**Target Telephone 2**.  On October 24, 2023, the Honorable Lisa Godbey Wood authorized a wiretap permitting the Government to intercept communications to and from target telephone 2 ("TT2"), for a number ending in -9653, and used by Defendant Roger Jenkins.  Doc. 712-7.  The Order also authorized a wiretap for communications to and from target telephone 3 ("TT3"), for a number ending in -8246, and used by Defendant Roger Jenkins.  The Order named Defendant Hawkins as a Target Interceptee.  Id. at 2.  The request was supported by a 53-page affidavit signed by Agent Fox.  Doc. 712-9.

Agent Fox's affidavit in support of the October 24, 2023 wiretap Order is substantially similar to his affidavits in support of the orders permitting interception of TT1. Agent Fox explained in his affidavit that conversations concerning drug transactions that law enforcement intercepted on TT1 provided probable cause to tap TT2 and TT3. Id. ¶¶ 30–35. Agent Fox also described the need for interception, in substantially the same terms as in his affidavits for TT1. Id. ¶¶ 48–86.

## LEGAL STANDARD

"Title III of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, sets forth numerous requirements the government must meet before electronic surveillance (wiretaps) may be authorized." United States v. Flores, No. 1:05-CR-558, 2007 WL 2904109, at *21 (N.D. Ga. Sept. 27, 2007). Under 18 U.S.C. § 2518, a wiretap application must include:

> a full and complete statement of the facts and circumstances relied upon by the applicant . . . including details as to the particular offense . . . , a particular description of . . . the type of communications sought to be intercepted, the identity of the person . . .whose communications are to be intercepted, and a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

United States v. Gonzalez Perez, 283 F. App'x 716, 720 (11th Cir. 2008) (alterations in original) (internal marks omitted) (quoting 18 U.S.C. § 2518(1)(b), (c)). Upon a proper application, a district judge may issue an ex parte order authorizing the interception of wire communications if the judge finds probable cause to believe an individual is committing or has committed a qualifying offense; particular communications concerning that offense will be obtained through such interception; and the facilities from which, or the place where, the communications are to be intercepted are being used in connection with the offense, or are leased to, listed in the name

of, or commonly used by such person. United States v. Duarte-Rosales, No. 1:05-CR-197-6, 2008 WL 140665, at *2 (N.D. Ga. Jan. 11, 2008) (citing 18 U.S.C. § 2518(3)(a), (b), (d)); see also United States v. Robles, 283 F. App'x 726, 734–35 (11th Cir. 2008).

Applications for wiretaps must be supported by the same probable cause required for a search warrant. United States v. Hyppolite, 609 F. App'x 597, 601 n.2 (11th Cir. 2015) (citing United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990)). Specifically, applications must be supported by probable cause to believe "an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of [Title 18]." 18 U.S.C. § 2518. Section 2516 includes any offense connected to "the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic drugs," as well as "any Federal felony." 18 U.S.C. §§ 2516(1)(e), 2516(3). The determination of whether probable cause exists should be a "practical, common-sense decision" focused on whether the "totality of the circumstances" indicate there is probable cause the evidence sought will be obtained. Hyppolite, 609 F. App'x at 601 n.2. For a wiretap, the "information supporting probable cause should be sufficient enough for a determination the particular telephone number is being used in furtherance of unlawful activity." Id. (citing United States v. Domme, 753 F.2d 950, 954 n.2 (11th Cir. 1985)). Probable cause does not require overwhelmingly convincing evidence but only "reasonably trustworthy information." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). Finally, wiretap orders issued under Title III are presumed to be valid. United States v. Weber, 808 F.2d 1422, 1423 (11th Cir. 1987).

To challenge the veracity of an affidavit in support of a search warrant, a defendant must make "'a substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged

statement or omission was essential to the finding of probable cause." United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006) (quoting Franks v. Delaware, 438 U.S. 154, 155–56 (1978)).  If the defendant meets both requirements, he is entitled to an evidentiary hearing on the issue.  At that hearing, the defendant must demonstrate, by a preponderance of the evidence, the existence of falsity or reckless disregard and must demonstrate that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Franks v. Delaware, 438 U.S. 154, 156 (1978).

The requirements for making a substantial preliminary showing are "not lightly met." Arbolaez, 450 F.3d at 1294.  Negligent or insignificant false statements or omissions will not invalidate a wiretap order.  United States v. Reid, 69 F.3d 1109, 1114 (11th Cir. 1995).  Even so, intentional and reckless omissions will only invalidate a wiretap order "if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997).

The defendant's burden is to show that "absent those misrepresentations or omissions, probable cause would have been lacking." United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) (quoting United States v. Novaton, 271 F.3d 968, 987 (11th Cir. 2001)).  "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 428 U.S. at 172.

In reviewing challenges to Title III intercepts, the Court is mindful "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." United States v. Bourassa, No. 4:18-CR-3, 2019 WL 7559293, at *4 (N.D. Ga. July 25, 2019) (quoting United States v. Stokes, No. 96 CR 481, 1996 WL

727400, at *5 (S.D.N.Y. Dec. 18, 1996)).  Moreover, "a wiretap order is presumed to be valid, and a defendant has the burden of overcoming the presumption and of proving that the wiretap order was unlawfully obtained."  <u>Flores</u>, 2007 WL 2904109, at *22.

**DISCUSSION**

Defendant Hawkins moves to suppress wiretaps "issued for the interception of Mr. Hawkins' cellular telephone."  Doc. 648 at 1.  Hawkins makes several arguments related to probable cause.  Hawkins argues that the wiretap applications did not create sufficient showing of probable cause.  <u>Id.</u> at 3.  Hawkins argues that the wiretap applications relied on confidential informants whose reliability and basis of knowledge were unknown.  <u>Id.</u>  Hawkins argues that Agent Fox made misrepresentations in the affidavit supporting the August 9, 2023 wiretap Order for TT1.  Hawkins argues specifically that the affidavit included references to several different criminal convictions, when he only has one prior conviction.  <u>Id.</u> at 9–10.  Hawkins argues he is, therefore, entitled to a <u>Franks</u> hearing.  <u>Id.</u>  In addition to his probable cause arguments, Hawkins also argues that the TT1 wiretap application did not make a sufficient showing of necessity.[3]  <u>Id.</u> at 10.  Hawkins does not appear to allege any specific infirmity in any other wiretap application.

## I.    Probable Cause to Intercept TT1

### A.    General Probable Cause Arguments

As an initial matter, Hawkins states several times throughout his Motion that the wiretap applications did not make a sufficient showing of probable cause.  Doc. 648 at 3–5.  However, elsewhere in the Motion, Hawkins argues that a wiretap was not necessary because a range of

---

[3]        In the Motion, Hawkins makes arguments about staleness and minimization.  Doc. 648 at 5–6.  At the hearing, Hawkins affirmatively abandoned those arguments, so I do not address them here.  Hawkins also makes arguments in his Motion about illegally obtained evidence.  <u>Id.</u> at 7–8.  Hawkins never alleges that any specific evidence was illegally obtained in this case.  Hawkins provided no additional argument or evidence to this point at the hearing.  I treat this argument to be abandoned, as well.

other investigative methods could have been used and were used.  Id. at 10–13.  At the hearing, Hawkins explained that law enforcement did not need to obtain a wiretap because they had a large amount of information supporting the charges already.  Hawkins's probable cause argument and his necessity argument appear to be inconsistent.  Hawkins argues that there was no probable cause for a wiretap.  But he also argues that law enforcement did not need a wiretap because it already had sufficient information to indict.  At the hearing, counsel for Hawkins acknowledged the inconsistency and stated he intended to move forward with his necessity argument (which is addressed below).  Therefore, his argument in the Motion that the warrant was generally unsupported by probable cause appears to be abandoned.  Even if it were not abandoned, Hawkins's necessity arguments undermine his probable cause arguments such that they are wholly unconvincing. And—to be clear—there is ample information in the TT1 wiretap application to demonstrate probable cause.

Hawkins's arguments concerning confidential source reliability are also unconvincing.  Hawkins argues that confidential sources' basis of knowledge and reliability is unknown.  Doc. 648 at 3.  However, Agent Fox stated the basis of knowledge and credibility for all confidential sources.  He stated that all confidential sources' information had been corroborated, and he deemed them to be credible.  Doc. 712-3 ¶¶ 32–39.  Hawkins made no additional arguments on this issue at the hearing.  Because the affidavit clearly established the basis for all confidential sources' involvement in the investigation, Hawkins's argument provides no basis for suppression.

### B.    Franks Analysis

Hawkins argues that Agent Fox made a material representation in the August 2024 affidavit.  Specifically, Hawkins argues that the affidavit included references to several prior

criminal convictions.  Doc. 648 at 9–10.  Hawkins argues that he only has one prior conviction, for robbery in 2015.  Id. at 10.  At the hearing, the Government conceded that this was a misstatement but argued that Agent Fox did not make any material misrepresentation.

Agent Fox's affidavit would clearly still support probable cause even excluding the challenged portion, and Hawkins is not entitled to a Franks hearing.  As noted above, a defendant must show that probable cause would be absent if the challenged misrepresentations were excised from the affidavit.  Kapordelis, 569 F.3d at 1309.  Here, Agent Fox described an extensive series of interactions supporting probable cause, including controlled buys with confidential sources and a number of calls between confidential sources and Hawkins on TT1 coordinating and arranging those drug transactions.  Agent Fox's affidavit demonstrates at least probable cause that TT1 was used by Hawkins to engage in the target offenses.  Even if Hawkins had no prior criminal history, there would still be probable cause for a wiretap of TT1.  While Hawkins has identified a misstatement in Agent Fox's affidavit, it is not a material misrepresentation, and it did not undermine probable cause.  Hawkins's Franks argument, therefore, fails.

## II.    Necessity for a Wiretap

Hawkins argues that a wiretap was unnecessary because law enforcement had multiple less intrusive methods of investigation at their disposal.  Doc. 648 at 10.  Hawkins argues that the TT1 applications "make boilerplate conclusions about the necessity for wiretaps."  Id. at 11.  Hawkins argues that past success with certain techniques, like confidential informants, proves that those techniques could have been used further.  Hawkins argues that law enforcement "failed to exhaust" traditional methods of investigation before seeking a wiretap and therefore suppression is appropriate.  Id. at 12.

Section 2518(1)(c) of Title 18 of the United States Code demands each wiretap

application reflect "other investigative procedures have been tried and failed or . . . reasonably

appear unlikely to succeed if tried or to be too dangerous."  The burden of establishing necessity

is "not great."  United States v. Acosta, 807 F. Supp. 2d 1154, 1239 (N.D. Ga. 2011) (quoting

United States v. Gray, 410 F.3d 338, 343 (7th Cir. 2005)).

> The necessity requirement is designed to ensure that electronic surveillance is
> neither routinely employed nor used when less intrusive techniques will succeed
> . . . .  The affidavit need not, however, show a comprehensive exhaustion of all
> possible techniques, but must simply explain the retroactive or prospective failure
> of several investigative techniques that reasonably suggest themselves.

United States v. Van Horn, 789 F.2d 1492, 1495–96 (11th Cir. 1986).  The Government's

showing of necessity "must be read in a 'practical and commonsense fashion,'" and the district

court is entitled to "broad discretion" in making its assessment of necessity.  United States v.

Alonso, 740 F.2d 862, 868 (11th Cir. 1984).  An order authorizing a wiretap "will not be

overturned 'simply because defense lawyers are able to suggest post factum some investigative

technique that might have been used and was not.'"  Id. at 869 (quoting United States v. Hyde,

574 F.2d 856, 867 (5th Cir. 1978)).

A wiretap may be utilized to determine the contours and dimensions of an otherwise

impenetrable conspiracy, even where investigators have used conventional methods with limited

success.  See United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 (11th Cir. 2010)

(upholding wiretap where investigators had already uncovered substantial evidence using pen

registers, physical surveillance, and five confidential informants, given that agents could use

wiretaps to "determine the scope of the conspiracy and all of its members" and further

surveillance would increase the likelihood of discovery and searches would tip off

coconspirators).  A wiretap is deemed necessary if traditional methods of investigation fail to

disclose "the full extent of [the defendant's] criminal activities and his coconspirators." United States v. Perez, 661 F.3d 568, 582 (11th Cir. 2011) (upholding a district court's denial of a defendant's motion to suppress information obtained from a wiretap where the government had obtained evidence from confidential informants, but such evidence was not sufficient to disclose the full extent of the defendant's criminal activities.).

In each wiretap application, Agent Fox stated specifically and in detail the alternative methods used and the limitations of each. For example, in the application for the initial wiretap, Agent Fox explained that the investigation involved multiple confidential human sources. Doc. 712-3 ¶ 98. Agent Fox explained that confidential human sources are useful and explained that law enforcement used those sources effectively to conduct multiple controlled drug purchases. Id. However, Agent Fox also explained that confidential human sources had not provided "the necessary evidence to achieve the goals of this investigation." Id. Agent Fox explained that the sources had no direct knowledge of where any illegal drugs were sourced from and did not know about "source(s) of supply or other specifics" of the alleged drug conspiracy. Id. Agent Fox made similar statements about other investigatory methods. See id. ¶¶ 94–125.

Agent Fox's affidavit demonstrates that investigators used numerous conventional methods of surveillance and had limited success with those methods. Agent Fox showed that traditional methods of investigation failed to disclose the full extent of the alleged conspiracy. These are not boilerplate assertions, as Hawkins argues. In addition, investigators were not required to prove that they exhausted every possible method of surveillance short of a wiretap before seeking one. "Section 2518 was not intended to 'foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'"

Hyppolite, 609 F. App'x at 606–07 (quoting United States v. Alonso, 740 F.2d 862, 867–68 (11th Cir. 1984)).  Agent Fox's affidavit sufficiently informed the issuing judge of the difficulties involved in the use of conventional techniques.  Hawkins's necessity challenge, therefore, fails.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Defendant Hawkins's Motion to Suppress Wiretap Evidence.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

       **SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 1st day of December,

2025.

                  BENJAMIN W. CHEESBRO
                  UNITED STATES MAGISTRATE JUDGE
                  SOUTHERN DISTRICT OF GEORGIA